UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MP *by and through her guardian* VC, | : |
| and VC, *individually on her own behalf*, | : |
| Petitioners and Counter Defendants, | : |
| | : |
| v. | : No. 5:20-cv-04447 |
| | : |
| PARKLAND SCHOOL DISTRICT, | : |
| Respondent and Counter Claimant. | : |

**O P I N I O N**
**Plaintiff's Motion for Attorney's Fees, ECF No. 32 – Granted in part**

**Joseph F. Leeson, Jr.**                                                      **November 5, 2021**
**United States District Judge**

## I.     INTRODUCTION

This matter involves a decision rendered by Certified Hearing Officer (CHO) James Gerl in the case of Parkland High School student MP.  MP, through her guardian VC, alleged that Parkland School District failed to provide her a free appropriate public education (FAPE) as promised by the Individuals with Disabilities Education Act (IDEA) and that Parkland's actions amounted to discrimination on the basis of MP's disability in violation of both the IDEA and the Americans with Disabilities Act (ADA).  Plaintiffs also alleged that Parkland failed to appropriately respond to their request for an Independent Educational Evaluation (IEE).

In an Opinion dated August 25, 2021, this Court affirmed the CHO's decision on Plaintiffs' claim that MP was denied a FAPE, concluding that Parkland had provided MP a FAPE.  However, this Court concluded that Parkland's failure to appropriately respond to Plaintiffs' request for an IEE warranted relief.  In that same Opinion, this Court concluded that

Plaintiffs had succeeded on a significant issue in the litigation, and therefore, they were entitled to reasonable attorney's fees commensurate with that success.

Plaintiffs' counsel Attorney Andrew Schweizer and Attorney Zachary Meinen submit the present motion for attorney's fees.  Following a review of the parties' briefs in this matter, this Court grants Plaintiffs' motion for attorney's fees in part.  Accordingly, this Court awards Plaintiffs' counsel a total of $47,552.50 in attorney's fees and $400 in costs.

## II.    BACKGROUND

Since the facts of this matter are thoroughly set out in this Court's Opinion dated August 25, 2021, only a summary of the factual background of this case is provided here.  In 2017, MP enrolled at Parkland High School in the Parkland School District.  *See* Op. 8/25/21 at 4, ECF No. 30.  MP suffers from Rett Syndrome, which is a regressive neurodevelopmental disorder.  *See id.* at 4-5.  Once arriving at Parkland, MP was evaluated and reevaluated for the purpose of creating an Individual Education Plan (IEP).  *See id.* at 5-7.  In April of 2019, Plaintiffs, through counsel, sent a letter to Parkland, asserting that Parkland had failed to provide MP a FAPE and requesting an IEE at public expense.  *See id.* at 9.  When Parkland did not respond to Plaintiffs' request for an IEE by either filing a due process complaint or paying for the IEE, Plaintiffs took it upon themselves to file a due process complaint.  *See id.* at 2. The CHO rendered a decision in the matter, concluding that Parkland had provided MP a FAPE.  *See id.* at 10-11.  The CHO also concluded, however, that Parkland failed to appropriately respond to Plaintiffs' request for an IEE.  *See id.*  Notwithstanding, the CHO determined that this error was harmless and awarded no relief to Plaintiffs.  *See id.*

In an Opinion dated August 25, 2021, this Court reviewed the CHO's decision for factual and legal error.  *See id.*  This Court ultimately affirmed the CHO's conclusion that Parkland had

provided a FAPE.  However, this Court reversed the CHO's conclusion that Parkland's failure to respond to Plaintiffs' IEE request was harmless.  In doing so, this Court awarded appropriate relief for that violation.  *See id.* at 2.  Moreover, this Court concluded that because Plaintiffs succeeded on their IEE claim, they were a prevailing party and may recover reasonable attorney's fees.  *See id.* At that time, this Court provided the parties with a briefing schedule for any request for attorney's fees.  *See* Order 8/25/21, ECF No. 31.

On September 7, 2021, Plaintiffs filed their motion for attorney's fees.  *See* Mot., ECF No. 32.  On September 21, 2021, Parkland responded in opposition.  *See* Resp., ECF No. 33.  On September 28, 2021, Plaintiffs filed a reply to Parkland's response.  *See* Reply, ECF No. 34. And on October 11, 2021, Parkland filed a Sur-reply to Plaintiffs' reply.  *See* Sur-Reply, ECF No. 36.

## III.   LEGAL STANDARDS

### A.   Recovery of Attorney's Fees under the IDEA – Review of Applicable Law

Under the IDEA, "the court, 'in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability.'"  *W.H. v. Schuykill Valley Sch. Dist.*, 954 F. Supp. 2d 315, 331 (E.D. Pa. 2013) (quoting 20 U.S.C. § 1415(i)(3)(B)).  "To qualify as a prevailing party, a plaintiff must 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'"  *See id.* (quoting *John T. ex rel. Paul T. v. Del. Cnty. Intermediate Unit*, 318 F.3d 545, 555 (3d Cir. 2003).  "The 'touchstone' of the inquiry is 'the material alteration of the legal relationship of the parties.'"  *See id.* (quoting *John T.*, 318 F.3d at 555).

"When determining a fee award, an important factor 'that may lead the district court to adjust the fee upward or downward' is the prevailing party's 'degree of success.'"  *Rena C. v.*

*Colonial Sch. Dist.*, 840 F. App'x 676, 682 (3d Cir. 2020) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).  In cases involving "a common core of facts," the Third Circuit recently cautioned against viewing the case "as a series of discrete claims."  *See id.* (quoting *Hensley*, 461 U.S. at 435).  Rather, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *See id.* (quoting *Hensley*, 461 U.S. at 435); *see also id.* at 682 n.9 ("Where the relief sought differs from the relief obtained because the prevailing party lost on some issue, that lost issue directly relates to a party's lack of success in obtaining the relief it sought.").

      **B.**     **Calculation of Reasonable Attorney's Fees – Review of Applicable Law**

In determining a reasonable attorney's fees award, the district court should begin by calculating the "lodestar," which "multiplies the reasonable number of hours worked by an attorney by a reasonable hourly rate for that attorney to arrive at the total fee amount."  *See Melissa G. v. Sch. Dist. of Phila.*, Civ. A. No. 06-5527, 2008 WL 160613, at *2 (E.D. Pa. Jan. 14, 2008) (citing *Reid ex rel. Reid v. Sch. Dist. of Phila.*, Civ. A. No. 03-1742, 2005 WL 174847, at *2 (E.D. Pa. Jan. 21, 2005)).  "When calculating the lodestar amount, a court must examine the record to determine whether hours billed are 'unreasonable for the work performed.'"  *See id.* (quoting *Washington v. Phila. Cnty. Ct. of Com. Pls.*, 89 F.3d 1031, 1037 (3d Cir. 1996)).  Hours are to be excluded if they are "excessive, redundant, or otherwise unnecessary."  *See id.* (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

Next, in calculating an attorney's reasonable hourly rate, "courts look to 'the community billing rate charged by attorneys of equivalent skill and experience, performing work of similar complexity.'"  *See id.* (quoting *Washington*, 89 F.3d at 1036).  "While an attorney's customary billing rate is an appropriate starting point for calculating fees, proof of the attorney's self-

designated rate is not dispositive." *See id.* (quoting *Pub. Int. Research Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995)).  The Third Circuit has cited to the fee schedule published by Community Legal Services (CLS) as "a fair reflection of the prevailing market rates in Philadelphia." *See id.* at 3 n.4 (quoting *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001)).  Additionally, "an attorney's admission to the bar" is "the relevant starting point for evaluating experience." *See id.* (citing *Phillips v. Phila. Housing Auth.*, Civ. A. No. 00-4275, 2005 WL 3488872, at *6 (E.D. Pa. Dec. 20, 2005)).

Once the lodestar is calculated, a district court should (1) identify any "*Johnson*[1] factors . . . not subsumed in the lodestar, (2) "analyze[] those factors in light of the facts of the case, (3) and decide whether "a downward deviation from the lodestar [is] justified." *See Souryavong v. Lackawanna County*, 872 F.3d 122, 128 (3d Cir. 2017).  In *Johnson*, the Fifth Circuit identified twelve factors a district court may consider when determining the reasonableness of a fee award. *See Johnson*, 488 F.2d at 717-19.  Those factors include:

(1)    "The time and labor required;"

(2)    "The novelty and difficulty of the questions;"

(3)    "The skill requisite to perform the legal service properly;"

(4)    "The preclusion of other employment by the attorney due to acceptance of the case;"

(5)    "The customary fee;"

(6)    "Whether the fee is fixed or contingent;"

(7)    "Time limitations imposed by the client or the circumstances;"

(8)    "The amount involved and the results obtained;"

---

[1]    *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974).

(9)     "The experience, reputation, and ability of the attorneys;"

(10)    "The 'undesirability' of the case;"

(11)    "The nature and length of the professional relationship with the client;" and

(12)    "Awards in similar cases."

*See id.*  The Third Circuit has indicated that *Johnson* factors may be considered "on the backend of the lodestar's calculation, as long as they are *not* already 'subsumed in the lodestar calculation.'"  *See Souryavong*, 872 F.3d at 128 (emphasis added) (quoting *Perdue*, 559 U.S. at 553).

## IV.    ANALYSIS

In determining the reasonable fees to be awarded, this Court must calculate the lodestar by multiplying the reasonable hours worked by the attorneys' reasonable hourly rates.  To do so, this Court must first determine whether the hours worked by each attorney were reasonable and to what extent any reduction in those hours is warranted.  Next, this Court must determine the reasonable hourly rate in light of the prevailing rights and experience of each attorney.  Finally, this Court must analyze any relevant *Johnson* factors not subsumed in this calculation and determine whether those factors warrant a deviation from the lodestar.

### A.    Reasonable Hours Worked

As part of their filing, Plaintiffs' counsel provided a billing statement that details their work on this matter.  Plaintiffs' counsel assert that the hours represented in this statement are the reasonable hours worked.  Parkland, however, takes issue with several of the entries, arguing that they are either unreasonable, duplicative, or otherwise excludable.  Each of those disputed items is reviewed below.  In summary, some reductions are necessary in order to render the whole of the hours worked reasonable.

**1.     A slight reduction is warranted in the hours spent prior to the filing of the Amended Complaint.**

Parkland first seeks a reduction in the hours that Plaintiffs' counsel billed prior to the filing of the Amended Complaint in the underlying due process proceeding.  Specifically, Parkland takes issue with a total of 31.2 hours that were billed between March 18, 2019 and October 24, 2019.  By Parkland's account, the filing of the Amended Complaint represented the start of any reimbursable work.  *See* Resp. 9-10.  However, this argument is unavailing.  On April 8, 2019, Plaintiffs, through their counsel, sent a detailed letter to Parkland requesting, among other things, that an IEE be performed for MP.  *See* R2. 138-41, ECF No. 5-1.  This letter represented the Plaintiffs' IEE request, and accordingly, this letter is the document that triggered Parkland's obligation to respond pursuant to 34 C.F.R. § 300.502(b)(2).  It was Parkland's failure to appropriately respond that necessitated Plaintiffs' initiation of the underlying due process proceeding.  While the Amended Complaint was not filed until October 2019, Plaintiffs' counsel were engaged in affirmative efforts to secure an IEE for MP as early as April 8, 2019.  Therefore, while Parkland would prefer the filing of the amended complaint to represent the starting point for reimbursement, a more apt starting point is April 8, 2019.

With that, it is appropriate to reduce the claimed hours so as to remove time billed between March 18, 2019 and April 8, 2019.  A review of these hours shows that they mostly consisted of communications between counsel and Plaintiffs.  Moreover, from the entries alone, there is no indication whether these conversations related to the eventual request for an IEE on April 8, 2019.  In total, this represents a reduction of 1.6 hours from the total time attributable to Schweizer.

**2.      A reduction is warranted in the hours spent on the Hearing Sessions.**

Next, Parkland seeks to strike all of the hours attributable to the second, third, and fourth Hearing Sessions held as part of the due process proceedings.  Parkland argues that Schweizer unnecessarily protracted the proceedings by asking irrelevant questions and by failing to have exhibits prepared in a viewable format, ultimately resulting in the need for a fourth hearing session.  Plaintiffs' counsel argues that its questioning practices did not result in an unreasonable expenditure of hours at that stage of the litigation.

Importantly, the CHO found the length and number of hearings troubling enough to include a remark on the issue in his decision.  *See* R1. 8-9.  In particular, the CHO noted that "[t]he hearing was unnecessarily protracted by a number of factors, including the failure to have the exhibits in front of the guardian in a form that the guardian could access during testimony, by excessive questioning of witnesses, and by questioning of witnesses on topics that were clearly not relevant in any way to the issues presented by this case."  *See id.*  Moreover, it appears from the record that the fourth Hearing Session was necessitated by difficulties between Plaintiffs' counsel and VC viewing exhibits that could have been resolved ahead of that hearing.  While this Court does not agree that a wholesale exclusion of the time attributable to the final three hearings is warranted, some reduction is necessary for those avoidable and unnecessary delays.  Accordingly, this Court strikes the time attributable to the fourth and final hearing session, as those delays were all but completely avoidable.  In total, this represents a reduction of 3.8 hours from the time attributable to Schweizer.

**3.     A reduction is warranted for the hours spent on Plaintiffs' Motion to Supplement.**

Parkland next seeks a reduction of 1.9 hours from Schweizer's billable time relating to his preparation of a motion to supplement the administrative record.  On January 5, 2021, Plaintiffs' counsel filed a motion to supplement the administrative record.  *See* ECF No. 16.  However, on January 12, 2021, both parties stipulated to the voluntary dismissal of the motion.  *See* ECF No. 17.  In its response, Parkland indicates that the motion requested to supplement the record with documents already in the record.  *See* Resp. 16.  Plaintiffs' counsel do not challenge this proposed reduction in their reply.  Accordingly, in light of the contents of the motion and its voluntary dismissal just days later, this Court finds the reduction warranted.  In total, this represents a reduction of 1.9 hours from Schweizer's time.

**4.     No reduction is warranted for time billed on Plaintiffs' Motion for Summary Judgment.**

Parkland next asks this Court to deduct 90% of the hours attributable to Plaintiffs' counsel's work on a portion of the motion for summary judgment and the accompanying statement of facts.  With respect to the motion itself, Parkland attempts to divide a single time entry into discrete segments that reflect the arguments made by Plaintiffs on summary judgment, and Parkland presumes that each argument took an equal fifty-seven minutes to produce.  Because Parkland asserts that Plaintiffs only prevailed on one of those arguments, namely their request for an IEE, Parkland contends that Plaintiffs' counsel should only be reimbursed for one hour of the 7.6 claimed for this portion of the brief.   Similarly, Parkland suggests that Plaintiffs' counsel should be reimbursed for a total of fifty-four minutes for their work on a ninety-five-paragraph statement of disputed facts.

However, this argument is unavailing.  Parkland's effort to separate counsel's work on their brief and statement of facts into discrete segments ignores the reality that many of these claims were interrelated, and ultimately, were based on MP's entire tenure as a student in the Parkland school district.[2]  It would be similarly impossible to thinly slice each of the over 450 time entries into IEE-related components and non-IEE components.  Rather, this balancing of the requested relief versus the achieved relief is much better served by the application of the *Johnson* factors below.  Accordingly, this Court declines to parse Plaintiffs' time entries in this manner, and therefore, no reduction is appropriate with respect to this challenge.

### 5.    No reduction is warranted for alleged "duplicative entries."

Next, Parkland asserts that certain entries duplicate other entries, and it seeks reductions to account for the alleged duplication.  "Reductions for duplicative hours may be made 'if the attorneys are *unreasonably* doing the same work.'"  *Mary Courtney T. v. Sch. Dist. of Phila.*, Civ A. No. 06-2278, 2009 WL 185426, at *5 (E.D. Pa. Jan. 22, 2009) (emphasis in original) (quoting *Rode*, 892 F.2d a 1187); *see also Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 362 (3d Cir. 2001) (noting "precise overlap in both time and task" caused conclusion that time billed was duplicative and therefore "not reasonable").  The claimed duplication relates to four documents drafted in tandem by both Schweizer and Meinen.  Each instance is reviewed below. In summary, there is no evidence that Plaintiffs' counsel unreasonably worked together on these filings, and accordingly, no deduction is warranted for these entries.

### a.    Drafting of the Instant Complaint

First, Parkland claims that Plaintiffs' counsel duplicated work related to the filing of the Complaint in instant matter.  Parkland points to 17.2 hours of work by Schweizer and Meinen,

---

[2]         The relatedness of these claims is further addressed below in section IV.D.2.

and it suggests that only three hours should be reimbursable.  However, a comparison of the hours worked by Plaintiffs' counsel to the resultant work product renders this suggested reduction unreasonable.  Over those approximately seventeen hours, Plaintiffs' counsel indicated that they reviewed the record, reviewed the case file, and drafted the Complaint in the instant action.  The record alone in this matter is approximately 930 pages.  However, even if this Court sets aside the time it took to review the file and focuses squarely on drafting of the Complaint alone, the hours claimed are still reasonable.  Plaintiffs' counsel drafted a thirty-five-page Complaint with over 175 detailed allegations.  This results in a work rate of approximately 30 minutes per page or approximately six minutes spent per allegation.  This time expenditure on the drafting and review of a federal Complaint is reasonable.  *See, e.g.*, *Walton v. Massanari*, 177 F. Supp. 2d 359, 364 (E.D. Pa. 2001) (finding collective fifty-three hours spent on twenty-seven-page appellate brief by two attorneys was reasonable where case was not "complex" but "involved a detailed fact-specific record"); *see also Maldonado*, 256 F.3d at 185-87 (finding collective 120 hours spent by multiple attorneys on forty-one-page brief was reasonable despite only encompassing a single uncomplicated issue).  When you factor in the time it takes to review a 930-page record while drafting the Complaint, the reasonableness of the hours becomes even more apparent.

Parkland's proposal of three reimbursable hours suggests that Plaintiffs' counsel were to review a 930-page record and draft over 175 allegations at a rate of one minute per allegation. The number of allegations to be drafted and the magnitude of the record to be reviewed renders Parkland's suggestion not worthy of serious consideration.  Rather, this Court finds that the combined hours spent by Schweizer and Meinen on the drafting of the Complaint are reasonable,

and in the absence of any evidence that the pair duplicated their hours, no reduction is warranted for duplicated hours.

      **b.**     **Drafting of Response to Parkland's Answer and Counterclaim**

Next, Parkland takes issue with the combined time billed by Schweizer and Meinen with respect to their review of and response to Defendant's Answer and Counterclaim.  Plaintiffs' counsel recorded a total of 8.2 hours for the review of the Answer, the research related to the legal authority underlying the counterclaim, and the drafting of the response.  The resultant work product was a twelve-page response, which included specific admissions, denials, and further answers to the allegations in Defendant's Answer and Counterclaim.  *See* ECF No. 12.  To put this work product into quantitative form, Plaintiffs' counsel achieved a work rate of approximately forty minutes per page for the drafting of the response.  This does not account for the additional time it took to review Parkland's forty-seven-page Answer or the time it took to research the legal issues presented by that Answer.  Parkland would erase 1.75 hours, claiming it represents duplicated work.  However, while both Schweizer and Meinen worked jointly on this filing, there is no evidence from the billing entries or hours claimed that the pair duplicated work.  Rather, this Court finds that the hours worked by Schweizer and Meinen on the response to the Answer are reasonable, and accordingly, no reduction is warranted.

      **c.**     **Drafting of Plaintiffs' Motion for Summary Judgment**

Next, Parkland claims that Schweizer and Meinen duplicated work on the motion for summary judgment.  As with the other entries, Parkland calls for a reduction of hours; however, in this case, Parkland does not provide a suggested reduction.  Notwithstanding, a review of the time entries shows no evidence of duplication, and the hours worked are reasonable.

In the 58.2 hours spent on the motion, Plaintiffs' counsel produced a sixty-page brief in support of its motion as well as a twenty-six-page statement of facts to accompany the motion. This results in a work rate of approximately forty minutes per page, which is a reasonable work rate for a motion for summary judgment. *See, e.g.*, *Walton*, 177 F. Supp. at 364 (finding two-hour-per-page rate reasonable); *see also Maldonado*, 256 F.3d at 185–87 (finding three-hour-per-page rate reasonable). Moreover, this Court stresses that this rough work rate does not incorporate the time spent reviewing the 930-page record in this case. Beyond the reasonableness of the combined hours spent, there is no evidence from the entries that Schweizer and Meinen duplicated work on this filing.

Accordingly, this Court finds the combined hours expended on the motion for summary judgment reasonable, and no reduction is warranted.

### d.   Drafting of Response to Parkland's Motion for Summary Judgment

Finally, Parkland claims that Schweizer and Meinen duplicated hours when responding to Parkland's motion for summary judgment and Parkland's statement of undisputed facts. In the 34.9 hours that Plaintiffs' counsel spent on this work, they produced a fifty-page brief in opposition to Parkland's motion and a sixty-page response to Parkland's statement of undisputed facts. This results in a work rate of approximately 20 minutes per page. This work rate does not account for time spent reviewing the record. Based on the combined time spent on these filings and the lack of evidence of duplication, the hours claimed are reasonable.

Parkland's suggestion that 19.9 hours be slashed from this total is patently unreasonable. Implicit in Parkland's suggestion that Plaintiffs' response should have taken only fifteen hours is the unrealistic expectation that Plaintiffs' counsel review Parkland's motion for summary judgment and attendant filings, analyze those filings in light of the sprawling record, and draft

110 pages in response at an average of approximately eight minutes per page.  Such a suggestion is practically unfathomable, and it is certainly far from reasonable.

Rather, this Court finds that the combined hours worked by Plaintiffs' counsel on the response to Parkland's motion for summary judgment are reasonable, and accordingly, no reduction is warranted.

> **6.      To the extent any reduction is warranted for vague entries, it is offset by the hours spent on Plaintiffs' reply.**

Parkland next argues that 1.6 hours should be deducted because certain entries are vague and do not clearly explain how the time was spent.  In particular, Parkland points to entries that are marked with only "w cc."  *See* Resp. 22.  Plaintiffs' counsel concedes that the entries are unclear.  However, Plaintiffs' counsel asks that this reduction be offset by the time it took to draft Plaintiffs' reply to Parkland's response to the motion for attorney's fees.  In return, Plaintiffs will not seek to recover separately for the time spent replying to Parkland's response to the present motion.  Provided that the reduction for the vague entries would be only 1.6 hours, the Court finds it reasonable to offset those hours against the time it took Plaintiffs' counsel to draft its reply.[3]  Accordingly, no reduction is warranted with respect to these hours.

> **7.      Review of Reasonable Hours Worked**

Following a review of all of the proposed reductions, the Court accepts some of them and rejects the remainder.  All told, Schweizer's billable time is reduced by a total of 7.3 hours for the reasons explained above.  After this reduction, Schweizer has worked a total of 213.7

---

[3]      Drafting an eleven-page reply in 1.6 hours would produce an approximate work rate of 8.7 minutes per page.  This work rate is reasonable, and accordingly, the proposed offset is reasonable.

reasonable hours.  None of the applicable reductions apply to the time spent by Meinen on this

matter.  Accordingly, Meinen has worked a total of 95.2 reasonable hours on this matter.

    **B.**    **Reasonable Hourly Rate**

Once the reasonable hours are determined, this Court must next determine the reasonable

hourly rate.  Since Meinen and Schweizer have different degrees of experience and involvement

in this matter, the Court conducts separate analyses for the reasonable hourly rate of each

attorney.

    **1.**    **Attorney Meinen**

Attorney Meinen graduated from law school in 2014.  *See* Mot. at Ex. B  ¶ 3 ("Meinen

Declr."), ECF No. 32-3.  According to his declaration, he maintains practices in both

Philadelphia, Pennsylvania and Milwaukee, Wisconsin.  *See id.* ¶ 5.  Meinen indicates that he

started his Philadelphia practice in 2015, and from 2015 to 2019, he has served as "of counsel"

for Montgomery Law.  *See id.* ¶ 6.  Meinen's practice focuses on the IDEA, Section 504, Title

IX, and the ADA, and he states that he has litigated education-related cases in administrative

courts, federal district courts, and circuit courts of appeals.  *See id.* ¶ 5.  This work has resulted in

"hundreds of settlements" and experience in over "200 special education matters."  *See id.* ¶ 5, 9.

From 2019 through 2021, Meinen was recognized as a "Rising Star" in both Wisconsin and

Pennsylvania.  *See id.* ¶ 12.

Based on the CLS fee schedule, an attorney with between 6 and 10 years of experience

has a billable hour range of $280-360.  *Attorney's Fees*, COMM. LEGAL SERVS. (July 1, 2018),

https://clsphila.org/about-community-legal-services/attorney-fees/ (hereinafter "*CLS Fees*").

Meinen requests a rate of $335 and hour, and Parkland suggests a rate of $250 an hour.  Based

on Meinen's length of experience, involvement in special education litigation, and outcomes in

that field, this Court finds that a rate of $300 an hour is reasonable.  This rate falls within the range suggested by the CLS fee schedule.  While Meinen only has approximately six years of experience, which would place him at the bottom end of that range, the $300 rate accounts for Meinen's specialized experience in the realm of education litigation and the outcomes he has achieved in those cases.  Accordingly, Meinen's reasonable hourly rate is $300.

### 2.    Attorney Schweizer

Attorney Schweizer graduated law school in 2017, and in January of 2018, he founded his own practice in Media, Pennsylvania.  *See* Mot. at Ex. C ¶ 2, 9 ("Schweizer Declr."), ECF No. 32-4.  Schweizer's practice focuses on education-related matters, and since 2018, he has settled "over 80 special education matters."  *See id.* ¶ 9.  Schweizer has litigated five due process hearings through final judgment, and he has also litigated in the Eastern District of Pennsylvania. *See id.*  In 2021, Schweizer was selected as a "Rising Star" in the area of school and education law.  *See id.* ¶ 12.

Based on the CLS fee schedule, an attorney with two to five years of experience has a billable hour range of $230-275.  *See CLS Fees*, *supra*.  Schweizer proposes a rate of $310 an hour, and Parkland suggests a rate of $200 an hour.  Considering Schweizer's experience, involvement in education matters, and outcomes in that field, this Court finds that a rate of $250 an hour is reasonable.  Schweizer's experience would place him at the lower end of this range. However, the $250 rate takes into account Schweizer's experience in litigating and settling education-related cases.  Accordingly, Schweizer's reasonable hourly rate is $250.

### C.    Lodestar Calculation prior to *Johnson* Factors & Deviation

As a result of the considerations discussed above, the reasonable hours worked by Schweizer on this matter are 213.7 and his reasonable hourly rate is $250.  This yields a lodestar

of $53,425 for Schweizer. The reasonable hours worked by Meinen are 95.2, and his reasonable hourly rate is $300. This yields a lodestar of $28,560 for Meinen.

### D. *Johnson* Factors

Following calculation of the lodestar for each attorney, the district court should then review the applicability of any *Johnson* factors. *See Souryavong*, 872 F.3d at 128. A district court may consider those relevant factors in applying an upward or downward deviation from the lodestar, so long as those factors are not already subsumed in the lodestar calculation. *See id.* Here, Parkland points to three applicable *Johnson* factors, and it asks this Court to further reduce the attorney's fee award based on those factors. Each factor is reviewed in turn. In summary, only one factor warrants a downward deviation in the lodestar.

#### 1. Novelty of the Legal Issues

Parkland asserts that the legal issues in this matter were not novel or complex, and therefore, a reduction in the lodestar is warranted. Notwithstanding, the complexity of this matter, to some extent, is already subsumed in the calculation of the lodestar. *See Souryavong*, 872 F.3d at 128; *see also McKnatt v. Delaware*, 369 F. Supp. 2d 521, 525 n.5 ("The second *Johnson* factor, 'novelty and difficulty of the question', is 'presumably ... fully reflected in the number of billable hours[.]'" (quoting *Blum v. Stenson*, 465 U.S. 886, 898 (1984))). Put another way, the complexity of the matter is reflected in the hours worked by Schweizer and Meinen that were already deemed reasonable by this Court. To that end, this Court has already rejected arguments that suggest Schweizer and Meinen worked unreasonable hours on a matter of standard difficulty.

Notwithstanding, even if this Court were to reconsider this factor, it would decline to deviate in either direction based on its application. While FAPE claims and IEE requests are

certainly common, this case does not fall outside of the standard deviation of FAPE and IEE

cases.  Put another way, this case was not so remarkably complex so as to warrant an upward

deviation and similarly not so remarkably simple so as to warrant a downward deviation.

Accordingly, no deviation from the lodestar is applied for this factor.

### 2.    The Amount Sought and the Resulting Success

As this Court alluded to its in Opinion dated August 25, 2021, a downward deviation may

be warranted based on the degree of Plaintiffs' success in this matter.  This Court explained:

> Plaintiffs brought claims for (1) denial of a FAPE, (2) violation of § 300.502(b)(2),
> (3) violation of Section 504, and (4) violation of the ADA. As discussed above,
> Plaintiffs' Section 504 claim and ADA claim were merely extensions of their claim
> for a denial of a FAPE. Accordingly, this litigation was primarily comprised of two
> major claims: the denial of FAPE claim and the § 300.502(b)(2) claim. Following
> this Court's review of the CHO's findings of fact and conclusions of law, Plaintiffs
> are the prevailing party on one of those two claims. Namely, Plaintiffs prevail on
> their § 300.502(b)(2) claim.

*See* Op. 8/25/21 at 40.

Consistent with that Opinion, Plaintiffs suggest a downward deviation of 50% from the

lodestar based on the difference between the relief sought and relief obtained.  Parkland,

however, suggests a much steeper reduction.  In its response, Parkland appears to argue for a

downward deviation of 89%, and it suggests that a downward deviation as large as 95% may be

appropriate.  *See* Resp. 32.  In its reply, Parkland suggests that the IEE is valueless, and implies

that no award is necessary.  However, Parkland's argument is unavailing.  Parkland appears to

argue that this Court's finding that Parkland provided a FAPE means that an IEE would have

been valueless.  This position undercuts multiple provisions of the IDEA.  The IDEA requires

periodic reevaluation of students.  *See* 20 U.S.C. § 1414(a)(2).  If a district's provision of a

FAPE obviated the need for reevaluation, then this provision would be superfluous.  Similarly,

an IEE is not valueless simply because a district is providing a FAPE at the time the IEE is requested.

Moreover, as this Court explained in its prior Opinion, Parkland cannot shield itself from liability based on the appropriateness of its evaluation of MP.  In the typical IEE case, a defendant-district may avoid having to pay for an IEE where it can show that its evaluation of the student was sufficient.  However, in order to benefit from those statutory protections, the defendant-district must discharge its obligation under the very same statute to respond appropriately to a plaintiff-student's request for an IEE.  Where a school fails to appropriately respond to a request for an IEE, as Parkland did here, it cannot later shield itself from liability on the basis that its initial evaluation was satisfactory.  Similarly, Parkland cannot now claim that its provision of a FAPE to MP acts as a barrier to the collection of attorney's fees.[4]

Finally, the sort of hyper-segmentation that Parkland engages in with respect to Plaintiffs' case is directly eschewed by this Circuit.  Parkland essentially argues that Plaintiffs' IEE claim constitutes one ninth or 11% of its total claims, which is how it arrives at its 89% downward deviation factor.  However, the Third Circuit recently stated that when a plaintiff raises multiple claims of relief based on related legal theories and a common core of facts, the "lawsuit cannot be viewed as a series of discrete claims."  *See Rena C.*, 840 F. App'x at 682 (quoting *Hensley*, 461 U.S. at 435).  Moreover, "[l]itigants in good faith may raise alternative

---

[4]     Parkland asserts that MP is no longer enrolled in the district as grounds for either reducing or precluding an award of attorney's fees.  However, to permit this sort of argument would be to permit Parkland to benefit from its failure to appropriately respond to Plaintiffs' IEE request.  At the time that Parkland was required to respond to Plaintiffs' IEE request, MP was still a student in the district at Parkland.  Moreover, when a parent believes their child is not receiving a FAPE, that parent may "unilaterally remove their disabled child from that school [and] place him or her in another school."  *See Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 242 (3d Cir. 2009) (citing 20 U.S.C. § 1412(a)(10)(C)).  Accordingly, Parkland cannot now use MP's enrollment status as a shield against the recovery of reasonable attorney's fees.

legal grounds for a desired outcome, and *the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee*."   *See id.* (emphasis in original) (quoting *Hensley*, 461 U.S. at 435).  Parkland asks this Court to do just that.  Its proposed deviation factor represents a categorical reduction of 11% for every legal ground upon which Plaintiffs based their FAPE claim, totaling 89%.  Based on the "common core of facts" and "related legal theories" that supported Plaintiffs' claims, such hyper-segmentation of Plaintiffs' claims would be improper.[5]

Accordingly, this Court does not agree with Parkland's estimation that the IEE is valueless even where a district is found to have provided a FAPE.  Rather, this Court agrees with Plaintiffs' suggested downward deviation factor of 50%.  Therefore, this Court applies a 50% downward deviation from the lodestar.

### 3.    Counsel Experience

Next, Parkland argues that counsel's experience should result in a downward deviation from the lodestar.  However, this Court considered the relevant experience of counsel in determining the reasonable hourly rate for each attorney.  Put another way, this factor is already subsumed in the calculation of the lodestar, and accordingly, it would be improper to factor it in a second time during consideration of the *Johnson* factors.  *See Souryavong*, 872 F.3d at 128.  Although Parkland argues that the issues raised under this factor are distinct and separate from those already considered, the concerns that Parkland lodges relate to the same basic issues of experience and delay that are subsumed in the calculation of both the reasonable hours and

---

[5]     Parkland's arguments regarding this issue lend themselves to this same conclusion. Parkland notes that "IEE claims are commonly brought not as distinct causes of action, but pursuant to a claim which globally asserts a denial of FAPE."  *See* Resp. 33.  This further supports the common factual and legal ground upon which Plaintiffs' IEE claim and FAPE claims rested, which, in turn, further cautions against the hyper-segmentation of these matters.

reasonable hourly rate.  Therefore, this Court declines to deviate downward from the lodestar on the basis of this factor.

V.      **CONCLUSION**

In light of all of the considerations reviewed above, the Court finds that the following attorney's fees are reasonable:

With respect to Attorney Schweizer, he has worked a total of 213.7 reasonable hours on this matter, excluding the work on the present motion.  His reasonable billing rate is $250 an hour, and the appropriate lodestar deviation factor is 50%.  Accordingly, this produces an attorney's fee of $26,712.50.  In addition, Schweizer worked a reasonable 2.6 hours on the present motion at a rate of $250.  With that amount included, the total fee award to Schweizer is $27,362.50.[6]

With respect to Attorney Meinen, he has worked a total of 95.2 reasonable hours on this matter, excluding work on the present motion.  His reasonable billing rate is $300 an hour, and the appropriate lodestar deviation is 50%.  Accordingly, this produces an attorney's fee of $14,280.  In addition, Meinen has worked a reasonable 19.7 hours on the instant motion for attorney's fees.  With that amount included, the total fee award to Meinen is $20,190.

The grand total of attorney's fees to be awarded is $47,552.50.   Costs are also awarded in the amount of $400, which comprises the filing fee for this matter.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[6]      The 50% downward deviation factor is not applied to those hours related to the pending motion for attorney's fees.